Next up is the matter of William Eshleman v. Patrick Industries, Inc. Mr. Dionne? Yes, Your Honors. My name is Samuel Dionne. I'm attorney for Appellant William Eshleman. I ask to reserve three minutes for rebuttal. Go ahead. The issues in this case are pretty straightforward. The lower court conceded that the appellant's complaint set forth a plausible case. We get to review that, though, right? We get the noble review over that determination. We can affirm the lower court on any bounds, even if it's not one that's presented, right?  So we should review the complaint in light of recent Third Circuit precedents such as Connolly, which says that conclusory allegations are entitled to no deference? Your Honor, I'm not going to stop you from doing what is necessary in this appeal. However, I'm just talking about the issues mentioned in the brief, so in the appeal. So the first issue is whether or not the impairment, the actual impairment, was minor or not. And then, of course, the second issue is whether or not the perceived impairment was or was not transitory. And the lower court followed this court's opinion. Let me stop you right there, if I may. Yes, Your Honor. Because it strikes me, first of all, that a perceived as claim is fundamentally different, and fundamentally different in terms of the proof regime that has to be proffered by a plaintiff than a showing of actual disability. With the latter, you are looking to certain available evidence that results in factual determinations, or at least at this stage, factual averments of an objective condition, which may or may not constitute a disability. But with a perceived as claim, what you're being asked to do, your client is being asked to do, is rely upon something that is subjective on the part of, in this case, an employer or the employer's agents, managers, what have you. Should we then view the proof, and more particularly, the averments of facts in a complaint in a different way with a perceived as claim, as opposed to a flat out disability claim? Yes, Your Honor. You hit the nail on the head. Usually I miss the nail. This is progress. I miss the board usually. Because we as people perceive certain illnesses in a certain way, and our opinions are based on non-medical terms, we base them on prejudice, myths, stereotypes, we cannot name an actual perceived condition. In the absence of direct evidence that you could eventually proffer, and which presumably you would plead here if you had it, you have very limited means, do you not, of determining what is evidence of perceived as, in this case. If somebody isn't talking, if somebody doesn't make a statement, if someone doesn't put something in writing reflecting a belief that Mr. Eshelman had cancer, let's say, and that it was serious, or non-minor, how do you go about making your case at this stage, at the pleading stage? Well, Your Honor, that's the case in all discrimination cases. It's very rare that an employer, you'll have direct evidence of the discrimination. So we must rely on evidence, that circumstantial evidence. What evidence do you have? Your client returned at full duty status both times. That doesn't seem like anyone had any perception of him being disabled in any way. If he was disabled in some way, he might not have returned in full duty. He might have returned in a different capacity. He might have had job restrictions. But you, in your complaint, say that he returned both times in full duty. Well, I think that is a misnomer that just because a person returns full duty to their job after a serious ailment, that automatically says, oh, well, then we just deny the fact that the person had a serious ailment and maybe could be perceived as being disabled. But you need to come forth with some evidence. And so the point is this. If they came forth with duty restrictions, that would be good evidence, maybe, that there was a perception. But you don't have any of that evidence available to you now because he came forth in full duty. So my question builds off Chief Judge Smith's question, which is, what evidence do you have that he was perceived as disabled? You don't have direct evidence. You don't have any restrictions on his duty. And so how do we know, other than his own allegation of somewhat of a conclusory nature, which is a problem under Connolly, that he was perceived as disabled?  It was the defendant's actions. And when I refer to defendant, I mean the respondent. So the defendant then proceeded, after approving Mr. Eshelman for vacation time during the time he was out on his last leave, then they fired him, accusing him of no call, no show, which is completely contrary to the fact that they just approved vacation time. They were aware that he was going to be out. Then they changed the reasoning. So you are relying, to some extent anyway, on the proximity in time of his discharge. Yes, Your Honor. Of course, the proximity in time immediately after his return, the reasons that appear to be pretextual, the shifting reasons, three different reasons given at different times. I'm looking at your complaint now, trying to find it. And I'm not saying it's not in there, but the performance evaluation is inconsistent with telling someone that they're being fired because of their performance. I just want to make sure that's in your complaint. Yes, it's noted in the complaint that the supervisor, when he shifted to giving performances a reason, he said that he had a poor performance evaluation, but in fact, the plaintiff had a good performance evaluation. And of course, if we can show that later on in the case, then that would be compelling reason to disbelieve the proper reason for termination. That combined with the proximity. Right. Let me make a point with respect to the proximity. I mean, my understanding of our case law would be that if all you had was proximity in termination here or in whatever adverse employment action was taken, at summary judgment, that wouldn't be enough for you. In and of itself. But we're not at summary judgment. So should we be looking at it differently, and that is in a more forgiving way with regard to the plaintiff, at this stage, even in the wake of Quambly and Iqbal. Yes, Your Honor, because at this point, we're only a complaint. And we've made McDonnell Douglas test type arguments that the proper reason is unbelievable. We have reason for there to be discrimination based on perceived disability. We have a reason to perceive the person as being disabled. We're not even going to touch McDonnell Douglas until we get to the summary judgment stage at the earliest. Right now, we're at the motion to dismiss stage, and as Judge Phipps' question makes clear, I mean, this is a pretty spare set of allegations in the complaint. So the question becomes, what is in here? What can we read in the complaint together, back-to-back, seriatim, that gets you across the threshold sufficiently to survive a motion to dismiss, beyond the close proximity of the termination? As I understand your position, you've also argued this dispute of fact that apparently exists with respect to performance reviews. Is that right? Yes, Your Honor. So the shifting reasons for termination and the proximity in time and also actual untruths about reason for termination. And we have a lot of that. I feel that there's more than in most cases in this particular complaint. There's a lot of it, other than the shifting reasons. Yes. What do you have in the complaint about? Well, we have, so in the complaint clearly spells out that Mr. Eshelman was out for a period of, I think it was three consecutive days, three or four consecutive days, I think it was four. And he called in and he asked that he use vacation time. During that absenteeism period, he was granted the vacation time. And then later the employer gave us a reason for termination. He was no call, no show, which is inconsistent with the fact that he was approved for vacation time. I didn't hear you. Later the employer... The employer accused him of being no call, no show on the days he was out, that he did not call in. So the client's at will, so the employer technically doesn't have to give any reason. Well, I'm not arguing... It can't be a discriminatory reason. But they don't have to give any reason, right? Well, they're at will, but they can't violate the ADA. Of course not. They can't be a discriminatory reason.  You're asking us to make inferences from timing and inferences from a changing reason, a changing rationale. And so it sounds to me that your entire case for stating a claim comes down to the fact that it was close in time and that they gave differing reasons for the termination. Therefore, it must be regarded as disability discrimination. It has to be plausible. Okay, I'm out of time, but I can answer that question. I can respond. He was out for nine and a half of 14 weeks preceding his termination. It's completely conceivable that the employer believed that that conduct would continue, that he would continue to be absent for illness-related reasons. And they formed a belief in their mind that this man is damaged goods and he's a liability and we have to let him go. And if we look at that reason that is very, very plausible, then we see that they, I lost my train of thought, but that's where we're going with this. Nine and a half or 14 and a half weeks of the last 14 and a half weeks. We'll have you back on rebuttal, Mr. Diaz. Thank you, Your Honor. Mr. Zeckman. Good morning. My name is Teresa Zeckman representing Patrick Industries in this matter. I have a little trouble hearing you. I don't know if the mic is on or not. I'm not tall enough to move it, so. Okay. Is that okay if I maybe lean in? Not to worry. Okay. Yeah, let me know if you cannot hear me. That's fine. Okay. So, in regarding this complaint, we feel that Judge Schmeel correctly dismissed the complaint. I understand how Mr. Dion has sort of lumped the leaves together. However, that's not how it occurred. There was a time period from October 15th to December 15th where the plaintiff had been out on medical leave due to a surgery to remove a nodule. Two months. Yes. That's not a trivial. I mean, that's not a trivial. Correct. I'm not saying that it's not trivial, but it does fall under the transitory definition. And then, I understand that. But then, when we add to that the fact that the word cancer is apparently used in conversation. Again, hardly a trivial condition. And it is not pled here that this was a mere biopsy. It's pled that it was removal of a nodule, which suggests a surgical procedure. I don't know of anyone who needs to be off for two months because of a mere biopsy. So, with that information being available in the workplace as well as to an employer, doesn't that enhance the other allegations that are made here together with the practical availability, or more accurately, the non-availability of other facts as to the subjective reasons for termination of the employer, which cannot be explored absent the conduct of a deposition or other form of discovery? Well, Your Honor, so he had this test. He did not have cancer, and there's no indication that he ever did have cancer. It was a test to really determine whether or not. But that's really irrelevant. Yeah, does the employer know that? Well, we're stuck with the allegations in the complaint. So, seven of the complaints says, Please inform Mr. Fisher that the nodule had to be removed and checked to see if it was cancerous. Yes, and then he was returned to work without any restrictions, no follow-up appointments that the employer was aware of, nothing alleged in the complaint regarding any additional treatments, medication, or anything else that he was on. He was returned to work. And that's why it's a regarded-as claim, as opposed to... Yes, correct. Well, it's a regarded-as claim. But he didn't have cancer. There was nothing to indicate that it was anything but a minor impairment that lasted less than six months. So, therefore, the district court correctly determined that it was minor transitory. Why would it be minor? It may be transitory because of the definition. Someone opens a patient's chest, and it takes two months to recover from that. How in the world is that minor? There are many, and as I noted in my brief, there's many cases where someone will have surgery. There's a spinal fusion, a hernia surgery. All of those things are found to have been classified as minor and transitory. So we're talking here about opening of a chest and removal of part of a vital organ. Part of a nodule, not... Well, from your experience... The nodule is out of the lung. Out of the lung, yes, but that would still... The nodule, you've got to take part of the lung. Well, I would assume also spinal fusion would, you know, you could say that opening up the back of somebody. Is that a lackey you're referring to? That is... The other ones are NPOs, which is one reason why we need to get a handle on the NPOs. And the summary judgment, not motions to dismiss. No, that was on a motion to dismiss. It is Santiago versus Urology Group of Princeton. What's the site? It's a Westlaw site, 2018, Westlaw, 347-2629. I'm sorry, is that it? I'm sorry, 347-2629. And there an employee underwent surgery to which a disc was removed, a disc fusion performed, and there also was dismissed on a motion to dismiss in that particular case. Is that in your brief, you know? Yes, I'm sorry, yes. On page 19 of our brief is that. And there's also several other indications, claims where there was surgery performed, where things were removed. There is a case out of Alabama where someone had heart blockages, and they underwent surgery for those blockages, and that too, he required six weeks of recovery. And the court there likewise found that to be transitory and minor. Here in... There's no definition of minor. No, there's no definition of minor. The definition of transitory... I observe to my law clerks that I think a minor condition is something somebody else has. But if it's something you have, then it's a big deal. Yes. But you've made the point, and you're quite correct, that in terms of the length of this, it meets the transitory standards set out in the statute. Yes, correct. And I know Mr. Dionne, in his brief to this court, has explained, given a particular example of, you know, someone maybe having a stroke or a skin condition that lasts longer than six months. Section... The first two parts of the disability discrimination, there's the having the actual disability, then there's the record of, and then it's regarded as. If somebody has an ailment that is transitory, but is more than a minor impairment, it falls under the first two definitions of the disability. Because someone could have breast cancer, and quite frankly, go into remission possibly within six months. And that clearly would not be minor. So there are situations, and the statute how it is written is for those particular issues that may fall within the six months, but they're something more than minor. Okay, let's go in the other direction from remission. In fact, let's look directly at one of the averments in this complaint. Why couldn't a court look at this complaint, and note not only the two-month period that this gentleman was off, because of a procedure and or a condition that led to a nodule being removed from his lung, along with the proximity issue that has been discussed here with your adversary, his termination after return, return from a few days off, some days off, for a severe upper respiratory infection. Something involving the lung. Doesn't that suggest something that is plausible for this court to see as enough to get by a motion to dismiss? I would disagree, Your Honor. He's lumping them both together. And he came back, Mr. Eshelman came back from work. He worked for over a month, almost two months, without any incidents. And then he goes out for a severe upper respiratory infection. It's a cold. He had a cold. It was the beginning of February. A lot of people have colds in February. He came back after five days. Again, no restrictions, no medication, no follow-up appointments, nothing. Where do we get a cold out of the complaint? An upper respiratory infection. I've seen the medical records. I mean, he had a cold. So it only lasted for a brief period of time. There's a huge difference between an infection and a cold. A gigantic difference. Well, he was only out for five days. He had no medicine. He had no follow-up treatment, nothing. And that's in the complaint? Yeah, he was returned to work. Now, we have had, this is the third complaint we've had in the case. So there was a prior FMLA case filed. So I'm trying to remember which discovery was, because we did have discovery in the initial FMLA case. There was discovery and a motion to dismiss? No, there was an FMLA case that was filed first. And so we conducted discovery in that case, because the employer had less than 50 employees, so you could not get that removed or dismissed on a motion to dismiss. So we had to conduct initial discovery to demonstrate that Patrick Industries did not have 50 employees. So we did conduct initial minimal discovery. Minimal discovery. Yeah, so I might know some facts that are not in this complaint, based on that prior. Can I ask you a question about the structure of the complaint? So let's just say that this is a regarded as claim. So let's just suppose that the complaint suffices to say, to allege plausibly, that Patrick Industries regarded Mr. Eshelman as being disabled. The next stage then, I suppose, if I understand the law correctly, please let me know if I'm wrong, is that then Patrick Industries has the ability to say, okay, he actually had something that was both transitory and minor. And because he had something that's transitory and minor, objectively, he can't recover. Is that the law, or did I misstate the law? Yes, whether it's an inaliment under the ADA is transitory or minor, is an affirmative defense. However, it's an affirmative defense that can be raised in a motion to dismiss. So what we're looking at is we're looking at the text of the complaint to find out if there's enough in the text of the complaint to support the objective determination that it was transitory and to support the objective determination that it was minor. Is that right? Correct. And so what you're saying is that this was two months out, two months of leave based on removing a nodule for a lung infection to be potentially cancerous, returned to duty full time, and then an upper respiratory infection returned to duty full time. And your position is that both those are transitory and that both those are minor. Is that right? Correct. Yes, Your Honor. Both of them are transitory and both of them are minor. And the district court looked at them both separately. And now, and Mr. Dionne has conceded in his brief that both of them on page 14 and 27 of his brief agrees that both ailments were transitory. So the question was whether or not they were minor. And separately or lumped together, they would be deemed to be minor. So we have this interesting question I don't know the case deals with. Well, minor is not defined, so it's always interesting for that reason. But what if one was viewed as minor and the other wasn't? He still has a claim then, right? What if the upper respiratory was viewed as minor? So that can't form the basis. But the surgery, it's not viewed as minor. It changes things because it's not proximate anymore, right? Because the surgery happened several months beforehand. Right, and then there's no temporal proximity like he's relying on here after coming back from the cold. So in order to rely on temporal proximity, is it your position that that upper respiratory infection would have to be something other than a minor injury? For him. For him. I mean, to me, both of them would end up still being minor. And the fact that he was let go two days after returning from work and returning to work full duty doesn't take away the fact that the Patrick Industries can assert that as an affirmed defense that they believed it to be minor and transitory and nothing more than that, that there was no long-term effects. There was nothing to indicate that. And along the lines of, that I had wanted to address and point this court to, on September 12th, because this is an issue that's raised in Appellant's brief, was regarding the fact that he's using conclusive allegations to allege that they thought, that Patrick Industries thought that he was a liability and that in the future he may get cancer. So at the time we had filed our briefs, this case was not out. It was issued December 12th of this year out of the 11th circuit. It is EEOC versus STEM, S-T-M-E. There's no case site. Westlaw, it's 2019. Westlaw 4314998. Say it again, please. It is 2019. Westlaw 4314998. And then in that case, while the facts are dissimilar regarding the plaintiff in that matter, the analysis that the court does was whether or not the, because in that case there was an individual who was terminated because they were going to take a trip to Ghana and there was fear that the person would get Ebola and come back. So they fired him in anticipation of that trip, while otherwise it was a perfectly healthy person. So the EEOC took the case up and they did, it was dismissed in the 11th circuit and the 11th circuit agreed with the dismissal because of the fact that predispositions to illnesses and whether or not someone may get something in the future is not relevant for a regarded as claim. Thank goodness that's the 11th circuit, not the third. So it's along the lines of, and it does the analysis and it cites the EEOC's own records regarding that in the fact that within the analysis, it's when the time of the alleged discriminatory action occurs as to whether or not somebody has the impairment in question. It's not whether or not someone may get that in the future, that's within the statute and with the regulatory language, it's whether or not at the time the action is taken, whether they had in fact the impairment at issue. Well, I'm trying to download the case now, but it's slower than I thought, but that just strikes me as a stretch that I hope we don't get to. I'm speaking only for myself, I haven't confirmed my priorities, but to say that an employer's fear that someone may contract the disease doesn't fall within the protection of the ADA given the way the ADA is worded. I'm taking a look at what they said. Anything further? No, I just, we request that this court affirm the decision of the district court finding that affirmative defense of minor and transitory and continue with the dismissal of the complaint. That's what it looks like, non-public opinion. I could be wrong about that, but it looks like it's their version of NPO. Yeah, it's just not been, it looks like it's going to be cited. Yeah, it's going to be cited, but it's too recent. Right, thank you very much. Ms. Eckman, Mr. Piano? Well, judges, I was actually the attorney on the case in Santiago versus Urology Group of Princeton that was cited recently. It's also NPO. I'm sorry, you're on? Actually, NPO is not presidential, Santiago. Yes, it wasn't presidential, no. It was just a unpublished opinion. And in that case, Santiago had scoliosis. He was alleged in the complaint. So when the judge gave leave for us to amend, we changed it to an actual disability, said scoliosis is known to, because she actually worked for a medical practice, Urology Group of Princeton. So they would know that scoliosis was a chronic condition. So that was resolved outside the scope of what we're talking about today. So, but commenting on what was stated about the issue of whether or not they fear that Mr. Eshelman would have cancer, I think it relates directly to the fact that he had an actual procedure done to remove a nodule in his lung, rather than he is a healthy person that walked into a business and they decided that maybe he could contract Ebola. Although I would think that that would be an actionable case, it does differ factually from this particular case. So I think we properly, with circumstantial evidence and the actual conditions, I think we set forth a basis for a case that is plausible. And... Just to confirm in your brief, you do concede that this is transitory. The fight is minor. Is that right? I concede that the actual impairment is transitory. There's no doubt. He returned in less than six months. I concede that. However, what the judge did was he lumped both transitory and minor into this time period of six months or less. So it's your position it's transitory, but it's a separate inquiry for minor. Do I have that right? Yes. Because if transitory is six months or less, then shouldn't we assume that maybe we should consider other factors on whether or not it's minor or not than just the time period it lasted? So what guidance do we have on minor? The ADA politely defines transitory for us and gives us nothing with minor. Where are we? The EEOC is pretty quiet on that as well. We're just kind of, we have a basis of common law developing as to what's minor. Is that our north star here or is there something else you'd point us to? Well, I'm out of time now, but I will answer that question. The final rule set forth the congressional intent to expand the ADA through the ADA Amendment Act. And they specifically said that definition of disability shall be broadly construed without extensive analysis. So that's on page 53-204, the final rule. So being that we're supposed to broadly construe what minor means, we are faced with the fact that we can't just say, okay, this is minor because it was a surgery where he returned within eight weeks as opposed to a removal of a piece of skin where you come back the next day. All right. Okay. All right. Thank you, Mr. Buchanan. Thank you, Your Honor. We'll take the matter under advisement of bank counsel for their presentations here today. And I ask the clerk to adjourn the proceedings. Please rise. This court stands adjourned until Wednesday, October 2nd at 11 a.m. Thank you.